The matter this morning is the United States v. Konrad and Mr. Schweitzer. Thank you, Your Honor. My name is Brett Schweitzer. I'm here from the Federal Defender Office representing Mr. Konrad in this appeal. At this time, I'd like to reserve two minutes for rebuttal, if I may. Yes, we're having trouble hearing you. Maybe if you raised up that mic a bit. Is that better? That's great. Thanks. Your Honors and Judge Fuentes, the CJA's Criminal Justice Act provides for the reimbursement of appointed counsel, the cost of appointed counsel, in the interest of justice. And the regulations under that act permit that as a permissive matter when there are appropriate circumstances. When he did the 2010 affidavit, what was understated on the affidavit? Was it the equity in the home? The initial CJA 23 affidavit, that included the mortgage amount on the loan for the home. And it didn't state anything about the home at all. It didn't state the value of the home. That's correct. It was not on there. And so what Judge Bailson did when he looked at this is said that ultimately that was immaterial because the home was not something that, first of all, it was jointly owned. Second of all, it was 90 percent mortgage. And I think implicit, although Judge Bailson didn't really say anything either way on this, there was no hiding of the home on that. Obviously, the mortgage was reported and perhaps it was an oversight or for whatever reason the home itself wasn't listed. But in any event, in Judge Bailson's analysis at the end of the day, that didn't really play into what happened. But he also grossly understated his monthly income and his spouse's monthly income. I don't think so, Your Honor. If we look at the whole, what happened here was we have, of course, the CJA 23, the PSR then came out in May of 2011, and then the affidavit that Judge Bailson ordered. If you look at the amounts in aggregate there, it's actually his income and assets together are stated the highest at the CJA 23. That's $97,000. That included $500 a month in income, $40,000 in cash and bank accounts and so forth. Didn't he say it was $2,500 a month on the initial? Excuse me? I thought he listed $2,500 a month on the initial application. Am I wrong on that? The last year of employment is listed as 2008 at $2,500. So that's what Mr. Conrad made in the past. What did the PSR say? The PSR said $750 a month for income. I think what we need to do is look at the big picture because these forms are not exactly precisely detailed as Judge Bailson recognized. When you look at the big picture, we have $97,000 on the CJA 23. We have $82,000 in the PSR, and we have $76,000 in the affidavit from September of 2011. So there's no real – I don't think there's any argument really here to be made that there were hidden assets. Certainly Judge Bailson didn't find anything like that. No, but he's under an obligation to state accurately what his assets are. Otherwise, no determination can be made as to whether or not to make an appointment. I think that is correct, Your Honor. That's a starting point. Absolutely, Your Honor. But what the court, I think, needs to look at is was there any material misrepresentation. Judge Bailson certainly didn't find any. When you look at – I mean, in fact, in the CJA 23, the initial affidavit, he apparently overstated his bank accounts because those were apparently not individually owned by him. Well, bank accounts, I mean, that's one of the issues we have to deal with. I mean, you cite the Lexham case, but Lexham is nuanced. What it says is that if the bank accounts you need the other spouse's consent, then you may not take them into account. But if the – for example, in this case, if Mr. Conrad controlled at least his portion of that account, you can take them into account. Well, that – the joint accounts are wholly owned by both Mr. Conrad and his spouse. So under the regulations for the CJA Act, those are not to be considered unless there's consent. Let's look at the guidelines. Guidelines simply use the term family. They don't say anything about jointly held accounts. And I tend to read the term family as perhaps being parents or maybe some inheritance that the spouse got. And multiple courts have looked at jointly held assets, as Judge Ambrose said, when one party has sufficient control to be able to take money out without the consent of the other. I think that perhaps that is debatable whether – how we would handle a joint account as opposed to equity in a home that's jointly owned or so forth. But, again, I think what we have here is full disclosure. And when we take a step back, the statutory requirement is in the interest of justice in appropriate circumstances. And I would suggest to Your Honors that here what happened is precisely unjust. If we were to – Mr. Schweitzer? Yes. If we were to take a pragmatic approach as the Court did in the Wilson case, the Sixth Circuit case, why couldn't we consider the individual retirement accounts which represent income that has been earned? Your Honor, I think what the important point with respect to the retirement accounts is their relative liquidity. In Evans, this Court cited liquidity as a factor for whether funds are available for repayment. Here we've got in the total picture of things we have a retirement account that is relatively modest, that is net of $70,000, I should point out. Judge Bailson would never recognize that. Two points. The IRA account can be liquidated, and it does include funds that are sufficient to pay counsel fees. That's correct, Your Honor, but I would suggest that's not the test. That's what Judge Bailson said. He said, well, this is more than the cost of counsel. What he didn't do and what is required under the Act is an assessment of need. Mr. Conrad, through this case and some problems that he's had in the wake of the death of his parents, has lost his professional license after experiencing distinguished careers. I'm sorry. Can I stop you for one second? Where in the statute does it suggest that there has to be an assessment of need in order to pay back counsel fees? That is in the 210.40.30, Your Honor. That section of the judicial guide, which is essentially the regulations under the Act. It would be sort of a CFR regulation, but for the fact that it's in the judicial branch. But these guidelines are promulgated by the Judicial Conference, and as recognized in Evans, have the force of authority. But I would suggest to Your Honors that the fundamental unfairness here is that nothing changed. When you look at the picture of what was disclosed, nothing changed. So Mr. Conrad was a magistrate, looked at this, looked at all the assets. Perhaps maybe the bank account was a little too high and the house was a little too low. But when you look at the bottom line for all of these disclosures that Judge Bailson found, there's no changed circumstances here. But what Judge Bailson did find was that if he had all the accurate information in 2010, CJA counsel would not have been appointed. He was not eligible. So regardless of how much he went over or what, he wasn't eligible at that time. So in that context, then the question becomes, what can be done? And it seems if you follow the Judge Friendly's opinion in Burrell from 1972, there's this continuing obligation to go back and look and see if somebody really complied. And it looks like he did not comply. Well, that's, Your Honor, I would say that that's not right. Whether he would have been appointed counsel if Judge Bailson had been sitting in the magistrate's seat at the beginning of the day, that's one issue. And perhaps he wouldn't have been. And perhaps we wouldn't win that issue on appeal. Perhaps he wasn't eligible. What did Judge Bailson do? Well, what he did wrong was to – What did he do, first of all, and then we'll figure out if it was right or wrong. What did he do when he looked back? And based on the same information that was before the magistrate at the beginning. No, the PSR didn't rely on the previous report. Yes, but there's no change. There's no material change in information. So if there – he did look at the PSR, as he's supposed to. And when you look at these cases, there aren't many of them. When you look at the cases, this statute is designed to address the scenario, what you'd expect to see. Someone lied on their affidavit. Someone's hiding information, hidden in bank accounts, giving money to kids in order to qualify and protect assets, whatever. That's what all the cases are. I don't read the cases that way. Material misrepresentation doesn't necessarily mean somebody went out. I mean, it could be just – let's just say there was an honest error. The magistrate made a mistake in 2010, and the PSR points out that the magistrate gives enough information, and the judge looks at Judge Belson and says, you know what? I'm not going to accuse anybody of anything. It was a mistake. He was not eligible. Therefore, what do we do? Yes, and there does need to be an avenue to address that, and here it is. The district judge should, when the case comes to him, take a look if there's any concern or if there's any question in his mind or just wants to double-check the magistrate's determination. However, the problem with doing it this way, putting it to the end of the case, is Mr. Conrad may have decided to go. If he knew he was going to get stuck with a bill at the end of this representation after being appointed a lawyer, he may have gone and gotten a private lawyer. I'll argue to the rest of the afternoon that we provide better or as good representation as any private lawyer, but not all clients see it that way. We'll agree with you on that. But there's real reliance interest. He may have represented himself. This was a simple case. You can't have it both ways. I'm sorry. I don't think he's trying to have it both ways, Your Honor. What I think he's entitled to is when there is disclosure, he's entitled to rely on that. And if there is a simple mistake, then the appropriate time to take care of that is at the beginning of the case, where after the magistrate makes a decision, Judge Bailson can make a decision, and the regulations provide for that. Would you, Mr. Schweitzer, would you agree that if the information regarding the individual retirement account, as well as all the other financial information were present before the court, including the joint bank accounts, that he would not have qualified for the federal public defender? I do not agree with that at all, Your Honor. I mean, this is a defendant who has a modest retirement nest egg, an obliterated professional future, has only been able to find employment at the age of 55 years old as an aerobic instructor, not a tenable long-term employment for a gentleman his age. And you have, this is not just $70,000. The only cases that I have seen that have addressed this issue, whether an individual retirement account can be considered, Patel and Panny both cut against you. Do you have any support for the idea that we should not consider the individual retirement account? Absolutely, Your Honor. I don't think the case turns on that, but it is, the support for that, the Lexan case is on the other side of Patel and Panny, first of all. But second of all, under this Court's decision in Evans, the issue is a little bit broader. The issue is liquidity, relative liquidity. We have joint accounts. We have a joint bank account. There's a significant amount of money there to cover this. What's your position on the joint account? My position on the joint account is the same as Judge Bielson's. It's not reachable? Judge Bielson's, it's not reachable. He didn't decide the issue. He decided the issue is to the home, I should just be clear. So if the joint account, if the spousal's joint account was a million dollars in a checking account, not reachable? I think it's not reachable unless the spouse, I mean, this is what the regulations say. The regulations say... The regulations, they're not, they're guidelines. The guidelines say that they speak about family, but if we think family means something different than a joint account... Well, I would say... And several courts have not read family in the way that you have wanted to because they've attached, they've gone in after joint accounts. Well, I think family naturally includes wife. I think that the guidelines provide for a voluntary looking at those assets but not otherwise. However, again, I don't think... Does he have the right to go to the bank and just write a check like most of us and take money out for himself? To the checking account. From the joint account. Of course. But they're both, it's wholly owned by both. How much was in the account when Judge Belson looked at this? Excuse me? How much was in the account when Judge Belson looked at this? $45,000? Well, the CJA 23 was about $40,000. Mr. Schweitzer, even if he qualifies for the federal defender or CJA counsel at the time he appears before the magistrate and subsequently he comes into a lot of money, supposing he wins the Powerball, are you suggesting that the government cannot proceed to require his reimbursement from monies, let's say substantial money that he comes into subsequent to his arraignment? Not at all, Your Honor. That's precisely when it's supposed to happen. Changed circumstances. Wins the lottery. Has hidden assets. The defendant in Wilson cited by the government prominently. Well, that's a big windfall for him, isn't it? That he gets free counsel and he gets to keep all the cash he comes upon after. No, no, no. He pays that, Your Honor. It is when there are changed circumstances, such as winning the lottery, then it's appropriate to take reimbursement. So that's absolutely true. Our argument here is... Okay. So we don't have to look necessarily at the moment of the arraignment. We can consider available funds subsequent. Absolutely, Your Honor. The key to this case is changed circumstances or not. And I would suggest, Your Honors, there aren't material changed circumstances. I see my lights up. I have... You know, can I ask you something about the supposing that we do require reimbursement or payback, the method that the district court used? I was interested in that because I understand you take issue with the $6,000 versus actual reimbursement. Supposing we were to order some form of payback, which is the appropriate method? You took the words right out of my mouth, Your Honor. I was going to ask for a few minutes to address that. Yes, methodology here is a problem. Judge Bailson, of course, went with an unprecedented, as far as I can see in the cases, value approach or sort of pulling the private bar. But it's quite clear that under the statute, there's a dictate for reimbursement. That's some sort of cost assessment. Now, from case to case... Let me ask you a dumb question. Do you even have jurisdiction to look at what he has ordered? I mean, look at all the cases. You know, you look at the Londano case from our court in 88, which talks about that this is an essentially administrative function that the judge does. And it's not a final decision within the meaning of Section 291. Now, admit, Londano talked about the appeal of a refusal to appoint counsel retroactively and a denial of a request for waiver of the maximum amounts allowable under the CJA. But it would seem that the concept applies to once that determination is made, do we even have jurisdiction? I think you do, Your Honor. You know, this is unlike a decision about appointment in the first instance, which can arguably be taken up later. That's certainly not a final order. Here, there's nothing left to be done. It's the end of the case. I'm looking at all the other circuits. The 2nd Circuit in Bloomer, 150, Fed 3rd, 146. The 6th Circuit in Stone at 53, Fed 3rd, 141. The Fed Circuit in the Sheeran case at 992 F 2nd, 1195, 1993. I could go on and on. They seem to indicate we stay out of that. Now, I admit the 4th and the 8th Circuits, without really getting into it, have decided to deal with the merits. But why shouldn't we follow what the majority of circuits do? Well, Your Honor, I think there are, and we didn't obviously brief the jurisdictional issues, so I can't speak to all of those individual cases. There are cases, certainly, that appeals courts have reviewed F, subsection F, for reimbursement orders. And I think there is a good reason to do that, because there needs to be some general guidance given to the district courts to promote some uniformity in this area, especially in these times. I mean, we can expect, I think, district judges to be, you know, looking at these issues a little bit more closely. Assuming we did pick it up, in the civil context, on the fee-shifting statutes, the Supreme Court's made it pretty clear that we looked at prevailing rates of the private attorneys, not public interest attorneys. Well, the problem here is we have a statute that specifically says a reimbursement to the appropriation. Okay? So that is a pretty clear cost approach language. And so I would suggest there's basically two guiding principles here for a federal defender situation. One is it's got to be a cost-based approach. There's got to be some sort of dealing with what was the cost here, and that derives from that statute. Interestingly, Judge Belson took the lowest of the three cost estimates given by the master right. He didn't have any cost estimates in front of him. What he had was what private lawyers would have said they would have quoted this gentleman at the beginning of the case. It is hard for me to think that it would have been anything less than $6,000. It probably would have been significantly more. I'm not sure, Your Honor. I don't have that. But I do think there are two principles. It should be a cost approach. And in order to promote fairness and uniformity between these situations where you have CJA, appointed counsel, private counsel, and defender counsel, the CJA caps should apply as well. So there should be some cost analysis up to the CJA cap because that's all that the court is ever going to pay. And it shouldn't pay, you know, someone should be forced to pay more just because on the wheel he got the defender as opposed to a private CJA lawyer. Of course, if he, if the, Mr. Schweitzer, if he never, if we decide that he never qualified for counsel in the first instance, he would have to have gotten private counsel. Isn't that essentially what Judge Belson did? He would have to have gotten private counsel and it would have cost him about $6,000. Why isn't that the fair analysis? Well, because. Can you hear me? Yeah. It is, if he had not, if the initial appointment decision would have turned out differently, then he would have paid that. And that's what Mr. Conrad would be out to a private lawyer. It doesn't have any necessary or direct relation to what the government is paid, or what the government pays for the provision of a defender or a CJA counsel. Now, I need to point out to the court, the court's very focused on $6,000. It could be a little bit more, sort of, you know, there's not much at play here. Another reason why I'm talking about general rules is this, these cases aren't always going to be about $6,000. There could be, you know, hundreds of thousands of dollars at stake in the next case. And so, what is relevant is the cost of provision of counsel, not necessarily what a big firm lawyer would have chosen under a profit-driven method for charging. Any other questions? Good. We'll have you back on rebuttal. Thank you. Thank you. Ms. Costello, is that you? May it please the Court? My name is Mary Kay Costello. I represent the United States in this appeal. As you've heard already, the defendant in this case had substantial assets in individual retirement accounts. And the district court properly took those accounts into consideration in deciding that Mr. Conrad was not eligible for court-appointed counsel. In connection with the jointly held accounts, does the consent of the spouse have to be obtained before you can go and take money out, or is it one you can just write yourself a check and not get the consent of the spouse? Your Honor, I think that the amount of money in joint accounts is something that certainly can be considered by the district court. I agree with Mr. Schweitzer. But my factual question was, does the spouse have to consent to take money out of that account? Under the guide, it does seem to require that that money not be considered at first until the spouse volunteers or agrees to help pay for the cost of appointed counsel. I didn't notice in your briefs that you suggested that we could take into account assets other than the individual retirement account. And it could be because that's what the district court based its decision on. Do you think that we can now look at other resources for repayment of counsel fees? Yes, Your Honor, and you are correct that we focused on the IRAs in our brief because that is what the district court focused on. But essentially, this is a case-by-case determination. This is a factual issue that the district court has to figure out. And all of the assets of the defendant should be taken into account. And the district court here did initially consider the joint accounts, or at least the existence of them, and then because of the guide decided, well, I'm not going to consider them, and he put them aside. I don't understand the position of the U.S. Attorney's Office on joint accounts. Are you saying they cannot be reached? No, Your Honor, I'm saying that they certainly can be reached. I think that the accounts should be taken into consideration because we're trying to get a big picture. I think what the district court did here was correct. He took what is the entire pot, what are the universal funds available to the defendant, and then he decided, well, which of these can we really consider and which of these should we not consider. Now, he followed the guide in deciding that the joint accounts shouldn't be considered, but that's not necessarily. What do the guidelines say? Do they say the joint accounts shall not be considered? No, that's not what they say, Your Honor. I can actually read it for you. As far as family resources, it's section 210.40.50, and it states that the initial determination of eligibility should be made without regard to the financial ability of the person's family unless the family indicates willingness and financial ability to retain counsel promptly. Now, is your reading is that that does not, that rules out joint accounts? Not necessarily, Your Honor, because I think the court made a good point. Well, it does or it doesn't. I'm not sure I understand your view. I think that based on the comments that the court made, I think the court made good points about the fact that Mr. Conrad has as much interest in a joint account as does his spouse, so it's not necessarily a family's asset or the spouse's asset. It is at least in part Mr. Conrad's asset as well, and it should be able to be considered. All right. And what about the IRAs? Yes, Your Honor, the IRAs. I think that here the court properly considered the IRAs. He had approximately $70,000 in these accounts, and we've talked about the liquidity of IRAs. Well, first of all, nobody ordered Mr. Conrad to liquidate his IRAs. There are other options. One is to take a loan from the IRA. It happens all the time. It would have to be repaid with interest, and he could then avoid tax consequences, the penalty for early withdrawal. Secondly, he had other options. As I said, nobody ordered him to liquidate it. He could have borrowed money from his family. But the fact that the IRA is not as liquid as, say, a savings account doesn't mean it should be ignored because we also have similar accounts. What about stocks? What if he had held some Exxon stock and the court took that into consideration? What if he had to sell that? Depending on the market, he could have had to sell it at a loss, and certainly there are tax consequences. What about CDs? There's a penalty for having to withdraw CDs before the maturity date. But courts don't ignore those funds just because they're not completely liquid. I mean, they should be taken into consideration. Otherwise, the more financially sophisticated the defendant, the more likely he or she is to qualify for counsel. What about the amount that has to be repaid, the $6,000 that Judge Bailson determined? And the statute that I'm looking at, it's 3006F, talks about reimbursement. And I think that's Mr. Schweitzer's point, is that reimbursement means paying back what you got. And in this case, that would not be $6,000. Could you speak to that? Yes, Your Honor, certainly. I think the issue here is we don't know what the actual cost was. That's something that was never put on the record. It was never disclosed by the defenders. Well, the federal defender, I thought, said that the appropriate measure would be what the CJA counsel would charge, which is somewhere in the neighborhood of under $2,000. Well, I would take issue with the $2,000, Your Honor. But going back to, you know, should we just apply the CJA rate here? The answer to that is no. Why? Why? The CJA rate is no more accurate than a market value approach. Neither one is the actual rate. But if the statute talks about reimbursement, which is to pay back, why the $6,000? Because it represents the value of what the defendant received. But doesn't that represent a windfall for the government in as much as the services were not valued at $6,000? I actually can't answer that question. I don't know. I honestly don't know what the cost was to the defenders, which is closer approximation. The CJA rate, the market value approach, we can't say. It wasn't unreasonable for the court to adopt the market value approach. It puts the defendant in the place he would have been had counsel not been appointed. Should there be a CJA cap? Apply to this defendant's rate? Yes. Not necessarily, Your Honor, because he didn't qualify for the CJA rate. He didn't qualify for CJA counsel according to the district court. Therefore, why should we apply the CJA rate? It wasn't unreasonable to apply to take a market value approach. I think one of the judges pointed out that in the civil context, we would go with the prevailing rate in determining what was the value of what the defendant received. Of course, if the district court had said, I'm going to use the CJA rate and apply it here, that wouldn't have been unreasonable. I mean, it's a reasonable approach. But just because he picked a market value approach doesn't make his decision unreasonable. It's not arbitrary. It's not unreasonable. It's not overly burdensome to the defendant. It puts him where he would have been had counsel not been appointed from the very beginning. Are you looking for a standard from the court of appeals that says what the reimbursement rate should be, that is, the private market rate? Or are you looking for a standard that says whatever is reasonable is okay as long as, in one case, it may be the CJA amount. In another case, it might be the private market. I think that's correct, Your Honor. I think that taking, you know, what is a reasonable approach on a case-by-case basis is okay in this circumstance. It's in the absence of evidence of the actual cost. If we knew what the actual cost was, we could say, well, then this should be the reimbursement amount. But we don't have that information. Without that information, I don't think it would be appropriate to limit the district court to some other appropriation amount, some other reimbursement amount. I mean, it has to be under the facts of each case. It appears to me from some of the cases that in other districts, the federal defender is able to say how much representation costs. Isn't the position of the federal defender itself that we use a CJA rate, which I understand to be $125 an hour? The CJA rate is $125 an hour, but I don't believe that that is the rate that is paid to the federal defender. But I honestly don't know that. I mean, it's an excellent question. Why don't we have a figure? Why don't we know what it costs? Well, yeah, you're right. You're right about that because they're salaried employees, but the argument they make is to use the CJA rate as a proxy for what they would charge. Right, but there's no factual basis to use that as a proxy. We don't have information that says that that's close to it. No, in this case, you're right, but we're thinking about the next case. If we're going to impose, if we're going to write a presidential opinion in this case, and we're going to talk about what the proper reimbursement rate is, in the next case, my guess is the defenders will have some figures that break it down, as has been done in some other cases around the country. So we've got to think this through at this time. That's why I'm not sure what the government's position is on this. I understand, Your Honor. I think that if we had some actual figures here for what it costs the federal defender to represent Mr. Conrad, it would be perfectly reasonable for the court to have awarded that amount, and that would probably be the right thing to do. That would be reimbursing the exact cost of the representation. That seems to make sense. There are some cases that say, well, by doing that, you're giving a windfall to somebody who, at the very least, submitted inaccurate figures and got the benefit of very good representation from the public defender's office at a cut rate. And that's correct, Your Honor, and I think that was on the mind of the district court, judging from the district's memorandum of opinion. If that's the case, then we don't use the cost approach that the public defender has advocated. Well, we can't use it here, Your Honor, but I think the standard here is an abuse of discretion. This is something that's left to the discretion of the trial court. It's a purely factual question. The question there is actually do we have jurisdiction, or if we do have jurisdiction, then the standard might be abuse of discretion. Let's go back before we get there. The question then becomes, if a person who is not eligible is deemed by a magistrate incorrectly to be eligible for CJA appointment, and the going rate is $125 an hour, and it's later discovered that, in fact, this person was not eligible, if you want to make the government whole, it would seem that it's about $125 per hour to be paid back. If, however, you say this person would have had to go out on his own and get private counsel, well, that's what he would have had to pay in this case, Mr. Conrad, but not necessarily what the government would have to pay out the CJA-approved counsel. Now, I admit you could probably add something on to that, to the $125. What does it cost for overhead in the office, et cetera, et cetera, but is the question here the harm to the government, or is the question here that there should, in effect, be a punitive price paid for not putting in the correct information at the time of this initial CJA appointment in 2010? Taking a market value approach, so taking an approach of what would it have cost the defendant, certainly sends a message, and it does have a punitive element to it to some extent. I mean, it's not overburdening the defendant because he's only paying what he would have had to pay anyway, but it does send, it adds that extra incentive not to make mistakes like this. Yeah, but wait a minute. I got the impression it was not his mistake that he was assigned the federal defender. I think that's true in this case, Your Honor, absolutely. I have no reason to believe that Mr. Conrad purposely misstated anything. I mean, the IRA is a little bit lower on the affidavit than it is in the PSR. That could be because of market changes. I mean, I think that the issue here, and this goes to Mr. Schweitzer's argument about when the district court can revisit this issue, is the district court has more information than the magistrate judge in this case. The district court knew that this was a case that was a plea to an information. It was a single count. It was limited discovery. It was straightforward sentencing. The magistrate judge had no idea of any of that, and that was part of what was taken into consideration. So you're correct. I mean, this is a case where the district court just had more information to put into the equation than the magistrate judge did. It's not Mr. Conrad's fault. But if we're talking about setting a precedent that's going to apply not just to this case, but to other cases as well, then taking the market value approach makes sense, because it does add, it's not just getting the cost back necessarily, but it's getting the value back of what the defendant. It does seem to me, though, that you're writing the word reimbursement right out of the statute. How do you end up imposing a market value of $6,000 in fees when the statute talks about reimbursing, in other words, paying back for the services that you got? Because, Your Honor, we don't have information to be able to reimburse for the exact cost. We don't know what the exact cost of the services were. So the district court is left to find some other measure, and the statute leaves the discretion to the district court to compute the amount. Did not the federal defender come up with a proposal involving the CJA counsel rates? Yes, but there's no reason to tie their services to the CJA rate versus the market value rate. We don't have the factual information to know which one is closer approximation of what they actually did. So in the absence of actual information, it was appropriate for the district court to pick, say, the market value approach over the CJA rate. Now, going back to Judge Ambrose's point, doesn't that represent, or I'm sorry, Judge Sirico, doesn't that represent a windfall for the government, given that it didn't cost that much? This was a straightforward plea. As I understand it, I don't remember the precise hours, but it took about, it was about 10 hours work or something like that? It depends on the estimate. Looking at some of the, I think there were three different private attorney estimates, and looking at those, some said 15 hours, some said 30 hours. But certainly we're not talking an enormous amount of hours here spent on this case. It was straightforward and simple. And certainly it's not a windfall to the government, Your Honor. Help me out with some facts. What was the misrepresentation in the initial report? In the initial affidavit? Yes. He valued his 401K at approximately $50,000. In the PSR, it's a number of approximately $74,000 or so. And what about his monthly income, joint household income? Right. There does seem to be a difference in the… What is it? What is the difference? I haven't done the math on that, Your Honor. But he says in his affidavit, we're talking about, he says $500 earned per month from unemployment. And then in his last month of employment, yeah, last year of employment, he earned $2,500 a month. And he says that his spouse earned $2,000 a month. And how much did his spouse make in the PSR report? Spouse had a monthly income of $6,000, Your Honor, in the PSR. And that sounds like a pretty big disparity to me. It is a large disparity, Your Honor. So, yes, I mean, certainly you could argue that there are differences and there are changes. I don't read the statute to require that. I don't read the statute to require changed circumstances or a false statement in an affidavit. In fact, the guide provides that the district court should, in fact, revisit the counsel appointment all the way up to the time of sentencing. I believe it is section 210.40.30, subsection D. And that goes to the standards for eligibility. And it talks about taking into consideration information in the pre-sentence report, which isn't compiled until right before sentencing. And the court should also take into consideration its intent with respect to fines and restitution that it's going to order. So the guides presume that this is a decision that is going to be revisited throughout the case and that it is not final until the district court rules at the time around sentencing, Your Honor, which is what happened here. Any other questions? Judge Fuentes, any other questions? No, thank you. Thank you very much, Ms. Costello. Mr. Schweitzer. Excuse me. Your Honors, what we're in large part doing today is making a third assessment of eligibility. And I think the second assessment was wrong. Until we make some determination of material misrepresentations or change circumstances, and to your last point, Judge Sirica, it's ‑‑ Forget the material misrepresentation. Just in the last part of the conversation, questions that Judge Sirica was asking your opposing counsel, Ms. Costello, with regard to the 401K, there was a significant difference, a positive difference between what was noted in 2010 and also noted in the PSR. Not a lie. Not a lie. We have no idea. Was money added to that from the checking account? Did the market change? Now, I don't think that's all market change. But remember that the court has a continuing obligation to look at this. And then the second point is that the spouse was making, what, $6,000 a month, and what did it say in 2010 she was making? In 2010, at the initial affidavit, the spousal income is noted as $2,000. We don't know what the change circumstances there are, if any, either. But, again ‑‑ That's a $4,000 difference per month. And, you know, we're here only talking ‑‑ I mean, it isn't so much the amount here that we're talking about, which is only $6,000. I shouldn't say only. I mean, it's still something that could be significant to a family. But, nonetheless, we're trying to come up with a way to deal with future cases. One, what can you look at? And in this case, can you look at jointly held accounts? Can you look at, among other things, IRAs? And then if we have jurisdiction, and if we do, it probably is an abuse of discretion standard, is what the judge here did an abuse of discretion? Or must we be consigned to use only the actual reimbursement at the $125 rate for what he gives back? And I appreciate that, Your Honor. This is, I think, an important case for future cases as well. And I think there are basically three things that are general principles that should be applied, sort of regardless of where you come out in this case. One is I do think there needs to be some recognition of a changed circumstances requirement. That flows right from the interests of justice, right from the reliance interests of the defendant. Blowing the whistle at the end of the game and saying, oh, now pay the bill, when I told you at the beginning you didn't, if there aren't changed circumstances, not fair. Let's flip that around. Let's say that he was flush with money in 2010 and there is no CJA appointment. If circumstances change for the worse, he's entitled to come back, isn't he, and say, I can't afford counsel. Sure. So why isn't what's good for the goose good for the gander? If things improve, why can't that be taken into account? They can be taken into account. What we're saying is when there's no changed circumstances, we have a bit of a disagreement as to whether there are changed circumstances on this record, but it's critically important. It goes to Judge Fuentes' lottery question too. If there are changed circumstances, that's when reimbursement is appropriate. Our argument is there aren't material changed circumstances here, and when that's true, when there aren't materially changed circumstances, Judge Bailison didn't even find materially changed circumstances, when that's true, it is fundamentally unfair to do a switcheroo on the defendant at the end of the day, when maybe he would have decided, you know what, I'm going to represent myself in this case. This is a two-bit case. I can do this. I'm not going to get caught. If we conclude that the IRA was reachable, in other words, if we agree with Judge Bailison, then you would agree with us that he was not qualified for federal defender services, right? I would, Your Honor. I think it's a closer call. At that point, we're under an abusive discretion standard. I appreciate that that's a high standard, and a judge maybe could go two ways on that, but you have to look at this. This is out of the regulation, out of the guide, under the statute. You have to look at not just the number. You have to look at what is that money going to be needed for the defendant's livelihood. That's his only money after having been stripped of a professional license for, you know, he's 55 years old. So in one case, maybe that's right. $70,000 retirement, maybe an appointment is inappropriate. In another case, it could be wrong. It's not an absolute figure. It's a totality of the circumstances. And I would argue in this case the totality absolutely weighs in favor of eligibility. But the statute reads that if the court finds that funds are available for payment, and Judge Bailson determined that the IRA was available for payment. I don't know how that was wrong when the fund could – I understand there's a penalty involved and so forth, but the funds could have been liquidated, and as the U.S. Attorney argues, you could have taken a loan against it. That's correct, Your Honor. Eligibility under 3006A sub B and under 210.40.30 sub A is defined as resources minus the need and support obligations of the defendant. So what I'm suggesting to the court is all you're looking at right now is the resources, $70,000. Doesn't that mean he isn't eligible? And I am trying to urge the court that you need to look at the second half of that equation, which is the needs and the support obligations of the defendant. And that's where it gets into more of a totality analysis. And in this case, case by case, this is a case by case determination, obviously, eligibility. In this case, he is eligible. Whereas maybe someone else who hasn't lost their professional license, who has better other support or whatever, perhaps he's ineligible. But I would say that that's not the case. There are two other things, Judge Sirica, in terms of future cases. I do think there needs to be some sort of change circumstances rule in place. That was your first one. That's number one. Number two is it absolutely has to be a cost basis. And I'm not encouraging the court to get into the weeds of that. I don't think the court needs to. I think there are various particular methods depending on the availability of information from case to case. But the poll start does have to be cost because that comes out of the statute. And now there's no, you know, there's no, there's no. It depends how you define cost. Why could it not just as easily be the cost of private defense as it is the reimbursement to the public defender? That's just not the cost to the government. I mean, the government, think of it this way. The government is sort of the Walmart of consumer of the world in this area, right? I mean, how many cases, you know, are the defenders involved in? I mean, there's plenty of efficiencies gained and so forth that are going to drive those costs down, as opposed to a for-profit motivated private lawyer. It really is apples and oranges. And the other important thing is the cap. Wait a minute. Maybe I missed part of the question. But why should it not be, why should it be something under $6,000? I thought your argument was that we should use the CJA rate at about 10 or 15 hours, whatever it is, for what was done in this case. I think that is the appropriate, most efficient disposition in this particular case. Absolutely. Why? Because, well, that's what, you know, we have those numbers now. That's what the district court found in terms of a reasonable amount of time and effort spent on this. We have not, my friend across the podium sort of suggested somehow we were not, we didn't come forward, defenders meaning, didn't come forward and somehow didn't produce information that we were obliged to or should have. That's not accurate at all. What happened here in the district court was the district court sort of had this hearing, as your honors are aware from the appendix, of, you know, is reimbursement, is eligibility appropriate here? And then the district court issued an opinion in order preemptively and said, okay, here's my method. The district court never came to the defender with, okay, this is, you know, I'm going to order reimbursement. What are your costs or anything like that? We went right from is this person eligible or not to I'm going to apply this value-based approach, which no one has ever applied as far as I can tell from the cases. So, you know, there's no, you know, the court is welcome to remand to kind of figure out the weeds of the situation. But that third point, you know, it's a cost-based approach and a cap. A cap is necessary because otherwise you're going to have wildly fluctuating, potentially wildly fluctuating depending on the cases, reimbursement obligations based on the arbitrary decision in the beginning of the case of whether a person is appointed a private CJA lawyer or a defender. Okay. Good. Any other questions? Thank you. Thank you, Mr. Schweitzer. Thank you. We thank both counsel. It's well-argued. We thank the matter.